IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of OHIO

| | |
|---|---|
| DEBBIE S. MORGAN, <br> 270 EAST 270TH STREET <br> EUCLID, OHIO  44132 | ) <br> ) <br> ) |
| | ) |
| Plaintiff, | ) <br> ) |
| | ) |
| v. | ) <br> ) |
| | ) |
| JP MORGAN CHASE BANK, N.A., <br> 270 PARK AVENUE <br> NEW YORK, NY  10017 | ) <br> ) <br> ) |
| | ) |
| Defendant, | ) <br> ) |
| | ) |
| ASSURANT, INC. <br> CSC-LAWYERS INCORPORATION SERVICE <br> 50 W. BROAD STREET, SUITE 1800 <br> COLUMBUS, OHIO 43215 | ) <br> ) <br> ) <br> ) |
| | ) |
| Defendant, | ) <br> ) |
| | ) |
| AMERICAN SECURITY INSURANCE SERVICE, INC. <br> C/O LARRY SCWING <br> 25730 FIRST STREET <br> WESTLAKE, OHIO 44145 | ) <br> ) <br> ) <br> ) |
| | ) |
| Defendant, | ) <br> ) |
| | ) |
| SAFEGUARD PROPERTIES, LLC <br> 7787 SAFEGUARD PLAZA <br> INDEPENDENCE, OHIO  44125 | ) <br> ) <br> ) |
| | ) |
| and | ) <br> ) |
| | ) |
| JOHN DOES 1 THROUGH 5 | ) <br> ) |
| | ) |
| Defendants. | ) |

CASE NO. CV _____

JUDGE _____

COMPLAINT

(Jury Demand Endorsed Hereon)

Now comes Plaintiff, Debbie S. Morgan, by and through counsel, and for her Complaint does hereby state:

## I.    PARTIES

1.    Plaintiff Debbie Morgan ("Morgan") is an individual over the age of 18 years old residing at 270 East 270th Street, Euclid, Ohio 44132.  She is a resident of Cuyahoga County, state of Ohio and a mortgagor for property located at 610 Hemlock, Euclid, Ohio ("Property") whose mortgage was, at all relevant times, serviced by Chase Home Finance and held by Defendant J.P. Morgan Chase Bank.

2.    J. P. Morgan Chase Bank, N.A. ("Chase") is a national bank registered to do business in Ohio and maintains a corporate office in New York.

3.    At all material times Chase Home Finance LLC ("CHF") was domiciled within the state of Ohio and maintained its corporate office in Columbus, Ohio.   CHF has recently merged with Defendant Chase, but was a separate and distinct entity which serviced the loan in dispute up until the recent merger.  CHF and Chase shall hereinafter be referenced collectively as "Chase".

4.    Assurant, Inc., is a Delaware corporation with corporate offices in New York, is registered to do business in Ohio and issues hazard insurance coverage on residential properties within the state of Ohio, including the Property.

5.    Defendant American Security Insurance Service, Inc. ("American") is an Ohio corporation and a subsidiary and/or affiliate of Assurant.  In conjunction with Assurant, American issued hazard insurance coverage for the Property.

6.    Upon information and belief, Assurant and/or American are affiliates of Chase.

7.    Safeguard Properties, LLC ("Safeguard") is an Ohio company.  It maintains corporate offices at 7887 Safeguard Plaza, Independence, OH 44125.  Upon information and belief, Safeguard, through a network of vendors and contractors, provides "lock out" and property preservation services and other services to Chase throughout the state of Ohio and in numerous other states.

8.    The true names or capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as John Does 1 through 5 are unknown to Morgan, who therefore sues said parties by such fictitious names.  Morgan will amend this Complaint to show their true names and capacities when ascertained.

## II.    FACTUAL ALLEGATIONS

9.    Upon information and belief, Chase directs, controls, formulates, or participates in the acts and/or practices alleged throughout this Complaint.  Defendants Assurant, American and Safeguard routinely act in the interest of Chase or as its agents.

10.    Upon information and belief, Chase contracted with Safeguard in furtherance of a scheme to permanently deprive Morgan of certain property interests including full use and enjoyment of the Property and her personalty contained therein.

11.     Upon information and belief, Chase authorized Safeguard to enter the Property during the month of September, 2006 and change the locks to the Property, thereby depriving Morgan thereto while the Property was under renovation. Thereafter, Chase through its agent, Safeguard caused or allowed to be removed, destroyed, disposed of or otherwise stolen, various items belonging to Morgan including numerous new appliances, construction materials, tools, office supplies, camera equipment, steel filing cabinets (containing personal and financial records), furnishings, lawn furniture and other personal property.

12.     As a direct and proximate result of the conduct of both Chase and Safeguard, Morgan was deprived of certain personal property stored at the Property from September 2006 through October 2011.

13.     Due to the lock out from the Property, Morgan was forced to repurchase many items including, but not limited to, luggage, books, office supplies, camera, tape recorders and French doors. Morgan will also be forced to repurchase appliances, tools, lawn furniture, a steel storage shed, storm doors, locks, and various other items.

14.     During the five year lockout period, the Property deteriorated and fell into disrepair as a result of the failure and refusal of Chase and Safeguard to maintain the Property, despite assuming exclusive control thereof for ostensibly this very purpose.

15.     As a result of the failure of Defendants Chase and Safeguard to maintain the roof and gutter system of the Property, moisture infiltrated the Property between September 2006 and October 2011, causing structural damage and mold growth.

16.     Morgan signed a note and mortgage with EquiFirst Corp in July 1999 which authorizes the charging of fees only in limited circumstances such as the borrower's default and as otherwise authorized by applicable law.  The note and mortgage were then assigned to Bank One.

17.     Chase acquired the ownership of and servicing rights for the loan on or about 2004. Due to a merger with Bank One, Chase became the successor in interest to Morgan's mortgage loan for the Property.

18.     Chase attempted to and has actually collected from Morgan various charges, fees and expenses not permitted by the note or by Ohio and Federal law, including, but not limited to, "corporate advances," "late charges," "attorney fees", "letter fees", "force-placed hazard insurance premiums", "recoverable borrower fees", "inspection fees", and other charges, fees and costs.

19.  At all times relevant, Chase collected and is still attempting to collect hazard insurance premiums from Morgan on behalf of Assurant and/or American.

20.  The facts surrounding the force placement of insurance in connection with Morgan's mortgage are typical of other reported experiences and illustrate how Chase exploits the opportunity to force place insurance to increase its profits at consumer's expense.  In fact, Chase has been subject to multiple class action filings as a result of tis force placed insurance practices and its relationship with Defendants American and Assurant.

21.  Morgan's mortgage permitted the lender to purchase force placed insurance only in the event Morgan failed to maintain hazard insurance coverage on the Property.

22.  At the time Morgan entered into the mortgage in 1999, she provided proof of hazard insurance for the Property to Bank One.  In late January of 2006, Morgan entered into a policy with Kemper Insurance and provided a copy of the Declaration page for proof of insurance to Chase to verify she had active continuing insurance.  In March of 2006, a Chase phone representative advised Morgan that insurance documentation was not on file.  The Chase representative requested a fax of the Declaration page establishing active insurance coverage.  Morgan immediately faxed the Declaration page to Chase as instructed.

23.  In May of 2006, Morgan received written notification from Chase that again it required proof of insurance or they would move forward to purchase a force placed insurance policy to protect Chase's rights in the property. Morgan faxed proof of insurance to the number provided to her by Chase on multiple occasions. Morgan's insurance agent also faxed proof of insurance to Chase in May of 2006.  In August of 2006, Morgan again sent a copy of her insurance Declaration page following receipt of another Chase letter indicating they were force placing insurance on the Property.

24.  In August of 2006, despite receiving verification multiple times of existing insurance on the Property, Chase nevertheless purchased force placed hazard insurance for the Property from Defendant Assurant and/or American, at an annual premium of $897.00. The coverage was only for fire and hazard to the Property, and provided no coverage against liability or for Morgan's household goods and furnishings, and essentially duplicated the fire and hazard coverage that Morgan already had in place through Kemper Insurance.

25.    Morgan refused to pay to Chase the insurance premiums for the forced placed insurance.  Instead, each month, she tendered to Chase in negotiable checks the amount otherwise due under the mortgage.

26.    In September 2006, prior to any judicial process, Chase authorized Safeguard to lock Morgan out of the Property.

27.    Chase applied some of the Morgan's monthly payments to improper and excessive charges and fees, including but not limited to the force placed insurance premium.  Eventually, Chase refused to accept Morgan's tendered mortgage payments.

28.    Following the improper charges for force placed insurance and Chase's application of Morgan's monthly payments to those charges and to other improper fees and charges, Chase declared Morgan to be in default and threatened to accelerate her loan.

29.    In December 2006, Chase notified Morgan that she was in default and demanded a sum to cure the default, together with any mortgage payments and late charges that became due.  Morgan attempted to pay all sums legally due and owing under the Note, but Chase rejected said payment and commenced a foreclosure action against Morgan and the Property.

30.    Based on the same purported "default" by Morgan, Chase initiated and then voluntarily dismissed four separate foreclosure actions between 2006 and 2011.  Each time Morgan provided proof of her pre-existing hazard insurance and delivery of same to Chase, counsel for Chase would dismiss the pending foreclosures and promise Morgan the return of the Property and an account adjustment for improper fees.  Unfortunately, Chase never followed up on its promises to Morgan.

31.    At all relevant times, Chase engaged in a uniform scheme and course of conduct to inflate its corporate profits by force-placing hazard insurance on properties which are subject to mortgages that it services or owns.  Standard mortgage instruments provide, *inter alia,* that mortgagee can do whatever is necessary to protect the mortgagee's rights in the property.  Chase interprets these provisions to allow the mortgagee to procure, or "force place," hazard insurance to protect the lien interests in the property even when the mortgagor has purchased and maintained such insurance.  Chase then passes on to the borrower and add to the mortgage the amounts spent to purchase insurance. In Morgan's case, the end result was duplicitous insurance coverage with both policy premiums charged to her, one by choice and the other by extortive means.

32.     Chase invoked the mortgage provisions to obtain insurance coverage from Assurant and/or
        American. In procuring this "coverage" however, Chase routinely obtains coverage in amounts
        which exceed the mortgagor's obligation to maintain coverage to protect the lien holder's interest
        as provided by the commitment letter, note or mortgage instrument. In Morgan's case, due to the
        duplicitous insurance policies, Chase essentially maintained hazard coverage of no less than
        $190,000 on a lien interest no greater than $89,000. Chase is not authorized to purchase such
        excessive coverage under the mortgage instruments. Moreover, Chase routinely bills, attempts to
        collect, and does in fact collect from borrowers, including Morgan, alleged "premium
        disbursements" for the force-placed insurance that far exceeds the ordinary charges for the former
        or existing policies for the same property.

33.     Upon information and belief, Chase force-placed insurance on the Property through a contractual
        arrangement it has with Assurant. Assurant markets credit insurance products to consumer
        financial institutions, using various incentives to entice the financial institutions to utilize
        Assurant. For example, the consumer financial institutions, including Chase, receive expense
        reimbursements and commissions directly from Assurant as compensation for allowing force-
        placement of the insurance on consumer loans. The "clients" of Assurant are consumer financial
        institutions, not the consumer borrowers. As a result of these agreements, Chase is incentivized to
        allow placement of the most excessive and expensive coverage possible on the loans it owns or
        services, because it earns a share in the profits generated by the charges it passes-on to and
        imposes on consumers.

34.     Chase engages in the above plan, scheme and course of conduct because of and pursuant to
        various agreements Chase has with force-placed insurance companies such as Assurant. Under
        said agreements, Chase receives a kickback or profit sharing in the coverage it allows either
        directly from Assurant or through a process of self re-insurance of the potential hazard liability on
        properties covered by Chase mortgages. By proceeding in this manner, Chase unreasonably and
        unconscionably inflates its purported "disbursements" to purchase the insurance and, rather than
        simply protecting its lien interest, actually profits from the force-placement and artificially inflates
        the borrower's mortgage loan balance and interest charges as a result.

35.     Chase places the insurance at these excessive levels even though it knows, both from its
        familiarity with the insurance market, as well as from its own solicitations and advertisements
        disseminated to mortgagors attempting to sell them insurance coverage, that suitable policies, if
        needed to protect its lien hold interest, are available at far lower costs. This happens in spite of the
        fact that Chase is fully familiar with the former or existing policies on the mortgaged properties,

including but not limited to the applicable premiums and the identity of the insurer and procuring broker or agency.

36.  Upon information and belief, in many instances, the insurance force placed by or at the direction of Chase is merely part of a general coverage agreement between Chase and the insurer, in which Chase and the insurer agree to divide the profits from alleged "premium" charges periodically based on actual loss experience in the general, force placed portfolio. Under these agreements, a mortgage property identified as having a potential policy lapse by Chase or its insurer, in Morgan's case Assurant, is simply added to the general coverage agreement without an actual, individual policy being issued to cover the specific property. Thus, to boost its own profits, instead of merely protecting its legitimate interests, Chase bypasses known lower cost insurance which in fact it sells to its borrowers, and other suitable insurance at reduced rates, to generate higher commissions and profits by force-placing insurance pursuant to kickback and profit-sharing agreements it has with insurers such as Assurant.

37.  Upon information and belief, the force-placed insurance scheme described herein is also monitored, participated in by and/or directed by Assurant, which maintains agents or employees working closely with Chase or at Chase's offices to oversee the force placement of insurance on property of Chase customers, including the Property. Upon information and belief, Chase provides Assurant with information concerning and/or access to customers' escrow accounts, and Assurant directs or participates in the actions necessary to remove money from such accounts to pay the force-placed insurance premiums.

38.  By proceeding as indicated above, Chase obtains commissions and other profits at higher percentages. Because of the inflated premiums, in return for placing with Assurant (or their wholly owned subsidiaries, including American Security Insurance) the result is over-priced and improper coverage. Chase also receives substantial other consideration in the form of services from Assurant and its agents. Said services are funded out of the proceeds of the force-placed insurance premiums charged off to borrowers, including Morgan. The cost of these increased commissions and services was borne entirely by Morgan who was overcharged for purported "disbursements" when, in fact, Chase was really "disbursing" at least a substantial portion of the force-placed insurance premium to itself. These overcharges also resulted in dramatic increases to Morgan's overall monthly mortgage payments and an increased interest revenue to Chase. Upon information and belief, these actions were undertaken pursuant to corporate wide policies on standardized computer-generated correspondence.

39.  Upon information and belief, the contract Assurant has with Chase enables Chase to participate in the underwriting profits of coverage placed by Chase. Some contracts link Chase's overall

commission to the claims experience on coverage placed by Chase on the consumer loans that Chase services and holds. Therefore, for those policies with low loss rations, Chase receives an even higher commission from Assurant. In this way, the contract financially encourages Chase to force-place insurance coverage on loans where there is an already existing coverage or policy in force. This is precisely what occurred in the instant case, where Morgan maintained an existing policy until 2009, three years after her forcible ejectment from the Property.

40.     Upon information and belief, another form of profit-sharing between Assurant and Chase is premium participation. In premium participation situations, the lender or servicer receives up to fifty percent (50%) of the profits generated by the insurance coverage it has placed on consumer loans. Some industry experts suggest that 97% of the profits generated by servicers such as Chase are derived from the placement of force-placed insurance policies on the loans of consumers. In some cases, insurers such as Assurant even code premiums generated by certain mortgage servicers to the servicer's captive insurance company or to reinsurance subsidiaries in which the servicer holds an equity interest. In either case, the consumer financial institution, such as Chase in this case, is financially encouraged to place the insurance at the highest possible charge and mandate duplicitous coverage so it can obtain even higher profits from Assurant.

41.     Upon information and belief, with regard to the forced placed hazard insurance, Chase has received, and continues to receive commissions and various financial incentives from Assurant that have not been disclosed to Morgan. These incentives arise from property insurance coverage placed on the Property for which Chase has force-placed the insurance.

42.     Upon information and belief, to the extent Chase or its affiliates receive from Assurant profits, commissions or premium participation profits, Chase has not "disbursed" those amounts as specified by its form agreements. Instead, Chase has received 'kickbacks' from Assurant while it has simultaneously and falsely charged Morgan for higher disbursements with interest thereon.

43.     Chase concealed from Morgan that Chase was charging for insurance coverage different from, and in addition to, the property insurance authorized by the form agreement. In addition, Chase failed to disclose that it was charging "disbursement" amounts which were not "disbursed" because Chase or its affiliate was receiving kickbacks and/or other services, profit sharing, underwriting commissions or other benefits from Assurant.

44.     Chase's practices described herein provided it the opportunity to increase its finance and interest charges at the expense of Morgan. This was achieved by restructuring Morgan's loan to increase

the indebtedness by requiring payment to Chase amounts for purported insurance charges and interest attributable to the insurance.

45. The practices described above are part of a past and ongoing scheme of conduct by Chase, and are consistent with its business practices related to all customers, including Morgan.

46. Chase and its co-conspirators, Assurant, Safeguard and others, have engaged in, and will continue to engage in, some or all of the following unfair, deceptive, unlawful, unconscionable activities and practices when consumers allegedly fail to purchase or maintain hazard insurance coverage. This scheme is the underlying motivation in refusing to accept or denying receipt of proof of insurance from consumers such as Morgan.

47. Chase and Assurant charge, collect, and attempt to collect from consumers, including Morgan, amounts in excess of the true cost of the insurance coverage for which the consumer may be contractually obligated to pay if voluntary hazard coverage is not maintained.

48. Chase misrepresented the amount it truly "disbursed" for force placed coverage, the nature of the charges for which Morgan was billed, and her obligation to pay those charges, and the "premium" charges associated therewith.

49. Chase and Assurant placed insurance in excess of the contractual amounts permitted, at inflated "costs" and in amounts and terms greater than, or unrelated to, the insurance necessary to protect Chase's interest in the Property.

50. Chase placed insurance without requiring Assurant to underwrite the Property, thus inflating the cost of insurance to Morgan as well as Chase's profile.

51. Morgan was wrongfully and maliciously charged a premium by Chase for force placed insurance in the amount of $897.00 annually and additional inproper or excessive late fees, corporate advances, attorney fees, and other costs as a direct and proximate result of Chase's actions, including the costs to defend three prior foreclosure actions.

52. On or about February 10, 2011 Morgan issued to Chase a "qualified written request" pursuant to RESPA 12 USCP 2605(e). Defendant Chase has failed or refused to provide Morgan with requested information pertaining to her account as required by Federal law.

## FIRST CAUSE OF ACTION
### Trespass
### (Vicarious Liability as to Chase)

53.     Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth herein.

54.     Chase, its agents, contractors and/or employees and/or Safeguard and other unknown agents entered the Property without permission or authorization at various times both during, before and after the multiple "foreclosure" proceedings initiated and dismissed against Morgan.

55.     At all relevant times, the Property was under renovation and not abandoned. Accordingly Chase, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Property, break into the Property, seize any of the Property or remove possessions contained therein.

56.     The actions of Chase, its agents, contractors and/or employees including Safeguard and yet undisclosed agents were done intentionally and/or with wanton, reckless and gross disregard for the rights of Morgan.

57.     Morgan has been damaged as a direct and proximate result of the actions of Chase, its agents, contractors and/or employees.

58.     Chase is liable for the unauthorized actions of its agents in trespassing upon the Property.

## SECOND CAUSE OF ACTION
### Trespass
### (As To Safeguard and John Does 1 - 5)

59.     Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

60.     Safeguard and yet unknown other Chase agents ("John Does 1-5") entered the Property without permission or authorization at various times throughout 2006, 2007, 2008, 2009, 2010 and 2011.

61.     Safeguard and John Does 1-5 were on notice that they had no right or authority to enter the Property, break into Morgan's home, seize her home and property and remove possessions within the home and garage.

10

62.    This trespass was done intentionally, and/or with wanton, reckless and gross disregard for the rights of Morgan.

63.    Morgan has been damaged as a direct and proximate result of the actions of Safeguard and Does 1-5.

### THIRD CAUSE OF ACTION
### Conversion
### (Vicarious Liability Conversion As to Chase)

64.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

65.    Chase, its agents, contractors and/or employees, including Safeguard and yet unknown agents (John Does 1-5) entered the Property without permission or authorization at various times, but no less than every 35 days throughout the period of October 2006 through April of 2011.  Chase, its agents, contractors and/or employees including Safeguard were on notice that they had no right or authority to enter onto the Property, break into Morgan's house, seize her home and property and remove possessions in the home, garage or otherwise on the Property.

66.    Morgan has been damaged as a direct and proximate result of the actions of Chase, its agents, contractors and/or employees, including Safeguard.

67.    Chase is responsible for the wrongful conversion of the Morgan's Property by its agents.

### FOURTH CAUSE OF ACTION
### Conversion
### (As to John Does 1 - 5, and Safeguard)

68.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

69.    Chase's yet unknown agents, agents, contractors and/or employees (John Does 1-5) and Safeguard entered the Property without permission or authorization at various times from 2006 to 2011. Chase's agents, known and unknown, contractors and/or employees and Safeguard were on notice that they had no right or authority to enter onto the Property, break into Morgan's home, seize her home and property and remove possessions from the house, garage and/or anywhere else on the Property.

70.     Once Safeguard and John Does 1-5 were on notice of such trespass on the Property, as a result of dismissal by Chase of various foreclosure proceedings throughout the period of 2006 through 2011, such parties had a duty to refrain from further unlawful conversion.

71.     In October 2006, Safeguard forcefully broke into the Property through the back door and entered without authorization.  While on the Property, Safeguard and John Does 1-5 unlawfully winterized the house, damaged the floor and carpeting and other fixtures, sifted through and removed personal property belonging to Morgan, broke the glass on a full panel storm door and proceeded to change the locks on all of the doors, drilled out dead bolt locks previously installed on the doors, placed a combination lock box on the front door and disposed of various items of personal property.

### FIFTH CAUSE OF ACTION
#### Negligence
#### (As to Chase, Safeguard and John Does 1 - 5)

72.     Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

73.     Chase owed a duty to Morgan to act as a reasonable and prudent agent/lender during all foreclosure proceedings, which included the obligation to verify that it was foreclosing on the Property as a direct and proximate result of her default under the mortgage note and not its own failures to act in a reasonable and prudent manner.

74.     Chase, its agents, contractors and/or employees negligently entered the Property and house without permission or authorization at various times both before and during its "foreclosure" process and proceedings and continued to do so despite voluntarily dismissing the 2006, 2007, and 2008 foreclosure proceedings.  Chase, its agents, contractors and/or employees were on notice that they had no legal right or authority to enter onto the Property, break into Morgan's home, seize her home and property and remove possessions in the home, garage and otherwise on the Property.

75.     Chase, Safeguard and John Does 1-5 breached the duty they owed to Morgan by using the court system in multiple foreclosure actions filed against Morgan when they knew or should have known the issue underlying default was their own failure, conduct and scheme of conduct including the failure to simply acknowledge the existence of preexisting hazard insurance on the Property.  As a direct and proximate result thereof, said parties seized the Property in 2006, throwing out or otherwise disposing of many of the Morgan's possessions and have never returned any of the missing possessions.

76.     Morgan has been damaged as a direct and proximate result of the actions of Chase, Safeguard and John Does 1-5.

## SIXTH CAUSE OF ACTION
### Violations of the Fair Debt Collection Practices Act
### (As to Chase)

77.     Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

78.     On numerous occasions in connection with the collection of force placed premiums and related debts resulting from the premiums applied to the Morgan's account, Chase has engaged in conduct the natural consequence of which was to harass, oppress, or abuse Morgan, in violation of Section 806 of the FDCPA, 15 U.S.C. §1692d, including but not limited to using or threatening to use force or other criminal means to harm her reputation and property.

79.     Specifically, in October 2006, Chase and its employees, subcontractors, and/or agents, intentionally and deliberately committed an unlawful breaking and entering into the Property. In the process thereof, to gain access to the house, they broke the glass on a full pane storm door, drilled out the locks on all entrance doors to the home, damaged flooring and carpeting and other fixtures, sifted through and moved personal property belonging to Morgan, changed the locks, and placed a combination lock on the front door.  All of the foregoing acts were committed knowing the Property was not abandoned and was in fact under renovation; the Property was not the subject of a foreclosure and no decree of foreclosure had been entered; no sale had been confirmed; and that Defendants had no present statutory or contractual right of possession of the Property.

80.     The acts described herein were committed through the use of force, violence, and/or criminal means.

81.     The acts above were done with malice and for the purpose of harassing, annoying, and pressuring Morgan to pay off an unlawful debt Chase was attempting to collect.

82.     The acts resulted in harm Morgan's reputation and property.

83.     The acts constitute and comprise a part of a pattern and practice of violations committed by Chase against not only Morgan, but other similarly situated individuals.

84. On numerous occasions in connection with the collection of debts owned and/or debts alleged to be in default by Chase, it has used false, deceptive, or misleading representations or means in representations made to Morgan and the Court, in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e, including but not limited to the following:

    a. Falsely representing the character, amount, legal status and/or nature of the debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of an disputed debt, in violation of Sections 807(2)(A) and (B) of the FDCPA, 15 U.S.C. §1692e(2)(A) &(B).

    b. Using false representations or deceptive means to collect or attempt to collect a debt in violation of Section 807(10) of the FDCPA, 15 U.S.C. §169e(10).

85. The acts described above constitute false, misleading, and/or deceptive representations and means. Chase made said representations with knowledge of their falsity or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

86. The acts described herein constitute false and/or misleading representations with respect to material facts.

87. The acts described herein were done intentionally and maliciously in order to deceive Morgan and the Court; to conceal Chase's status as debt collectors of unwarranted and perhaps illegal debts.

88. A portion of the money Chase attempted to collect was not due; a portion constituted fees not permitted by law and/or contractual agreement; and a portion constituted expenses not actually incurred.

89. In the case of each reinstatement agreement proffered to Morgan, Chase demanded that all payments be remitted, including those amounts remaining in dispute, by certified funds or money order, despite the fact that no such restriction was authorized by the contractual agreements.

90. This restriction on payments was instituted and imposed in order to limit Morgan's ability to prove payment and to track the proper allocation of funds remitted to her account.

91. In October of 2006, without a court order and in violation of law, Chase took actual possession of and dispossessed Morgan of the Property with malice and with knowledge that no present right to possession had vested to them.

92.  On numerous occasions, Chase posted conspicuous notices on the front door of the Property stating that the Property was vacant and that Morgan was delinquent on a consumer debt.  These acts were knowingly committed with full awareness that the Property was not abandoned, not vacant and was in fact undergoing extensive renovations.

93.  Said notices were posted during on-site visits by Chase, its employees, subcontactors, and/or agents, for the purpose of collecting a debt and assessing "corporate advances" not permitted by the mortgage contract.

94.  Visits did not result in inspection and/or maintenance designed to protect Chase's beneficial interest in the Property, Safeguard's bid submissions notifying Chase to repair ongoing deterioration of the Property, including missing shingles on the roof, gutters falling and required painting to the exterior of the home were not authorized as necessary to protect the interest of Chase as well as Morgan.

95.  On numerous occasions in attempting to collect debts allegedly owed by Morgan, Chase has continued collection activities despite having been notified directly and through legal counsel that Morgan disputed the debt or a portion of the debt and without having obtained a verification of the debt as required by section 809(b) of the FDCPA, 15 U.S.C. §1692g(b).

96.  Chase continued with its collection efforts/activities despite having been advised in writing by Morgan that she disputed the debt within 30 days of receiving the initial communication. Moreover, legal counsel for Chase has been advised on multiple occasions that a portion of the debt had been and was in dispute.

97.  All acts asserted in this cause of action constitute unfair debt collection practices.

## SEVENTH CAUSE OF ACTION
### Civil RICO
**(As against Defendants Chase, Assurant, American, Safeguard and John Does 1 - 5)**

98.  Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

99.  At all relevant times Morgan was a "person" within the meaning of RICO, 18 U.S.C. §1961(3) and 1964(C).

99.  At all relevant times Defendant Chase and the other Defendants named above (hereinafter the "Defendant Conspirators") formed an association-in-fact for the purpose of defrauding Morgan

and other innocent and unsuspecting borrowers in the state of Ohio.  This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. §1961(4).

100.    At all relevant times, Chase and the other Defendant Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprises' affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), in violation of RICO, 18 U.S.C. §1962(c)

101.    Specifically, at all relevant times, Chase and the other Defendant Conspirators engaged in "racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(1) by engaging in the acts set forth above.  The acts set forth above constitute a violation of one or more of the following statutes:  18 U.S.C. §1341 (mail fraud); 18 U.S.C. §1343 (wire fraud); section 1344 (financial institution fraud); section 1951 (relating to interference with commerce, robbery, or extortion); section 1957 (relating to engaging in money transactions in property derived from specific unlawful activity; Chase and the other Defendant Conspirators each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

102.    The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).  The acts alleged were related to each other by virtue of common participants, a common victim, Morgan, a common method of commission, and the common purpose and common result of defrauding Morgan of thousands of dollars and enriching the Conspirators at Morgan's expense while concealing the Conspirators' fraudulent activities.  The fraudulent scheme continued for over four years and threatens to continue despite the institution of this Complaint.

103.    As a result of Chase and the other Defendant Conspirators' violation of 18 U.S.C. §1962(c), Morgan has lost a large sum of money and the Property was converted to the sole use of Chase as a result of the racketeering activities conducted in the fraudulent scheme and as part of the prohibited activities herein alleged.

104.    As a result of their misconduct, Chase and the other Defendant Conspirators are liable to Morgan for her losses in an amount to be determined at trial.

105.    Pursuant to RICO, 18 U.S.C. §1964(c), Morgan is entitled to recover her damages plus costs and attorneys' fees from Plaintiffs.

### EIGHTH CAUSE OF ACTION
### RICO Conspiracy
### (As to Chase and the Other Defendant Conspirators)

106.     Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

107.     At all relevant times, Morgan was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964 (C).

108.     At all relevant times, Chase and the other Defendant Conspirators were each a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

109.     At all relevant times, Chase and the other Defendant Conspirators formed an association-in-fact for the purpose of defrauding Morgan. The association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

110.     At all relevant times, this enterprise was engaged in, and its pattern of activities affected interstate commerce within the meaning of RICO, 18 U.S.C. § 1962(c).

111.     As set forth in Count Seven, Chase and each of the other Defendant Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

112.     At all relevant times, Chase and the other Defendant Conspirators each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

113.     Chase and the other Defendant Conspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

114.     As a result of the Chase and the other Defendant Conspirators' violations of 18 U.S.C. § 1962(d), Morgan represents she has lost in excess of $100,000.00 in the fraudulent schemes Defendants created, organized, serviced, and continue to operate and run.

115.    At a result of the Conspiracy, Defendants are liable to Morgan for her losses in an amount to be determined at trial.

116.    Pursuant to RICO, 18 U.S.C. § 1964(c), Morgan is entitled to recover her damages plus costs and attorneys' fees from Plaintiffs.

## NINTH CAUSE OF ACTION
### RICO Extortion
### (As to Chase and the Other Defendant Conspirators)

117.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

118.    At all relevant times, Morgan was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3) and 1962(d).

119.    At all relevant times, Chase and the other Defendant Conspirators formed an association-in-fact for the purpose of defrauding Morgan. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1661(4)

120.    At all relevant times, this enterprise was engaged in, and its activities affected interstate commerce, within the meaning of RICO, 18 U.S.C. § 1962 (c).

121.    As set forth in Count Seven, Chase and each of the other Defendant Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

122.    At all relevant times, Chase and the other Defendant Conspirators each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962 (c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962 (d).

123.    Chase and the other Defendant Conspirators committed or caused to be committed a series of overt acts in the furtherance of the Conspiracy and to affect the object thereof, including but not limited to the acts set forth above and including repeated foreclosures in an effort to deprive Morgan of her legal and beneficial interest in the Property if she did not pay the unlawful demands of Chase.

124. As a result of the Defendants' actions and associations with an enterprise engaged in interstate commerce, Chase and the other Defendant Conspirators are liable to the Morgan for her losses in an amount to be determined at trial.

125. Pursuant to RICO U.S.C. § 1964(c), Morgan is entitled to recover triple damages, plus costs and attorneys' fees.

### TENTH CAUSE OF ACTION
### Breach of Contract
### (As to Chase)

126. Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

127. Chase is the lender-in-interest to Morgan's Mortgage and is bound by the terms of that Mortgage.

128. Chase breached the Mortgage by requiring Morgan to obtain additional force placed hazard insurance in excess of her principal balance.

129. Chase's breach was willful and not the result of mistake or inadvertence. Chase systematically and pervasively purchased force placed hazard insurance on behalf of Morgan, but at her cost in excess of the amount required under her mortgage agreement.

130. Chase failed to implement sound internal policies and practices in order to maintain and protect the integrity of the process of handling, managing, and modifying consumer loans.  Chase failed to obtain timely and accurate information on Morgan's loan; neglected to update and/or correct its loan data in a timely fashion; made inaccurate claims to Morgan; and engaged in a pattern and practice of unlawful, deliberate deceptive collection and servicing practices.

131. As a result of Chase's breach of the mortgage contract, Morgan has suffered damages in the form of increased insurance premiums, escrow charges, late fees, interest payments, attorneys' fees, and/or other charges, and unnecessary burden on her rights, all of which combined to effectively produce the unlawful seizure of the Property.

## ELEVENTH CAUSE OF ACTION
### Interference with Contractual Relations
### (As to Chase)

132.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set
forth in this cause of action.

133.    Prior to the initial foreclosure proceeding in 2006, Morgan had commenced a full renovation of
the Property. Chase intentionally and/or with reckless and gross disregard for the Morgan's rights
proceeded to lock out Morgan and to foreclose on the Property when it knew or should have
known of its own failures as a servicer and lending institution pertaining to the disputed insurance.
Chase had no legal right to force place hazard insurance on the Property, to charge late fees and
other charges due to the premiums charged for this insurance and further refuse to accept properly
submitted mortgage payments due under the mortgage loan.

134.    Chase interfered with Morgan's agreements with the contractors and resulted in unfinished
renovations and excessive costs and damages to Morgan.

135.    Due to the "lock out" Morgan has been prevented from completing the renovation process and
placing the Property on the market. Morgan has lost past and potential future income from the
Property as a result of the acts and omissions of Chase.

## TWELFTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (As to Chase)

136.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set
forth in this cause of action.

137.    Chase owed Morgan a duty of good faith and fair dealing, by virtue of its contractual relationship
(as a successor in interest following its merger with BankOne) with Morgan.

138.    Chase breached this duty by, among other things: (1) demanding and/or force-placing more hazard
insurance than required by state or federal law or the relevant loan and mortgage documents; (2)
misrepresenting the amount of hazard insurance Morgan was required to maintain on her property
through its unilateral purchase of force-placed hazard insurance on her behalf duplicitous to her
pre-existing coverage; (3) unreasonably exercising in bad faith any purported discretionary
authority afforded under the loan and mortgage documents; (4) imposing contractual requirements
that did not exist or that exceeded the requirements disclosed in the relevant contracts; (5)

charging Morgan sham "costs" for hazard insurance that did not reflect the true cost to Chase because a portion of such "costs" were retained by Chase or its affiliates (or kicked back to them) as commissions or other compensation; and (6) asserting unlawful control over the Property without judicial process; and (7) charging to Morgan unlawful escrow charges, reinstatement fees and attorney fees related to the unlawful foreclosure actions.

139.     As a result of Chase's breach of the covenant of good faith and fair dealing, Morgan has been injured and has suffered actual damages and economic losses in the form of damaged and stolen personalty, damage to the Property, increased insurance premiums, escrow charges, interest payments, late fees, attorneys' fees, court costs, and/or other charges, and unnecessary burdens on her property rights.

## THIRTEENTH CAUSE OF ACTION
### Unjust Enrichment
### (As to all Defendants)

140.     Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

141.     Chase and the other named Defendants have been unjustly enriched as a result of the conduct described in this Complaint and other inequitable schemes and conduct.

142.     The Defendants received a benefit from Morgan in the form of payment for force-placed hazard insurance, and Chase and their insurance affiliates retained a portion of these payments as kickbacks, commission or other compensation.

143.     Retention of these payments by Chase and their insurance affiliates, including Assurant, would be unjust and inequitable. Federal law permits lenders and servicers to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance. 42 U.S.C. § 4012(e)(2); *see also* 12 C.F.R. § 22.3.  Chase abused its discretion to pass through costs for force-placed hazard insurance to Morgan (in this case because she had pre-existing coverage which satisfied her legal obligations under the mortgage documents) by charging Morgan amounts in excess of the net costs incurred for such hazard insurance and by retaining at least a portion of the premium payments as kickbacks, commissions or other compensation for themselves and their affiliates.

144.  The kickbacks, commissions and other compensation that Chase and its affiliates received in connection with force-placed hazard insurance were not legitimately earned, and came at the ultimate expense of Morgan who had hazard insurance force-placed on her.

145.  Because it would be unjust and inequitable for Chase, its affiliates and agents to retain such payments, Morgan is entitled to restitution of all monies unjustly and inequitably retained.  Chase and its affiliates cannot retain thee payments in good conscience.

146.  The Chase Defendants knew or should have known Morgan was not required to purchase additional force placed hazard insurance for her property, as evidence by, *inter alia*, the following facts:

   a)  the plain language of Morgan's Mortgage does not require hazard insurance in excess of her principal balance;

   b)  HUD does not require hazard insurance in excess of a borrower's principal balance;

   c)  Chase acquired its interest in the Mortgage Note as successor by merger to Bank One which did not require hazard insurance in excess of Morgan's principal balance upon originating her mortgage;

   d)  Chase held and serviced Morgan's mortgage for many months, without claiming she was "required" to obtain additional hazard insurance exceeding the replacement cost of her home;

   e)  Chase did not and cannot identify any changes in federal or state law, the mortgage documents, or the circumstances surrounding the loan verifying that the pre-existing coverage was not adequate and was less than the coverage required by the mortgage documents; and

   f)  Chase's notice of the placing of force placed hazard insurance misrepresented the terms of Morgan's mortgage in that it fraudulently omitted to reference its knowledge that Morgan had more than adequate pre-existing hazard insurance coverage in place.

147.  As a result of Chase's fraudulent and deceptive acts, unfair and unlawful securing of a second lender placed hazard insurance policy in excess of the requirements under Morgan's mortgage, Morgan has incurred unnecessary and excessive expenses for lender-placed hazard insurance.  In addition, Chase and Assurant have been unfairly, unjustly, and unlawfully enriched by the kickbacks, commissions, or other compensation that was paid to them and their affiliates in connection with such lender-placed insurance.

148. As a debt collector and servicer of the Morgan's loan, Chase "advanced" monies to pay for items such as property inspections and maintenance that are deemed necessary to protect its rights in the property.

149. Chase added these "corporate advances" to Morgan's loan balance. In many instances Chase charged Morgan for alleged property inspection fees and maintenance fees when the real purpose of the inspector's and/or property management employee's visit to the property was to attempt to collect on the loan and to harass, annoy, and pressure Morgan.

150. Chase often charges to borrowers for property inspection and employs property management firms, specifically Safeguard, even when Chase has no reasonable basis to conduct an inspection or undertake property maintenance, as in the case of Morgan's non-abandoned property. Safeguard, at the specific direction of Chase, then conducted excessive and abusive inspections to further increase the indebtedness of Morgan to Chase and for its own profit.

151. When Morgan requested the amount of money required to reinstate or pay off her loan, Chase routinely assessed fees, such as late fees, prepayment penalties, loan modification fees, property inspection, attorneys' fees, and court costs, which are not authorized by the mortgage documents as expenses actually incurred.

152. In furtherance of their scheme, Chase and Safeguard conspired and agreed to assess fees for inspections, maintenance, court costs, attorneys' fees, and the like that were not actually incurred, necessary or warranted or authorized by the mortgage contract.

153. The scheme's purpose was to permit Chase and their co-conspirators to obtain a quick foreclosure decree on real property with equity and to assess significant, unauthorized "corporate advances" which would be collected at redemption, reinstatement, payoff or sale of the Property.

154. The initial wrongful foreclosure actions against Morgan resulted in the wrongful and extorted payment of attorney fees, appraisal costs, inspection fees, court costs, increased interest, late fees and premiums for wrongfully applied force placed insurance premiums charged to Morgan.

155. As a result of Chase's fraudulent and deceptive acts in seizing and maintaining possession of the Property, Morgan has suffered un-measurable harm with significant economic consequences. Safeguard had a vested economic interest in ignoring ongoing renovations and declaring the property vacant. If a home is vacant, this justifies ongoing inspections of the property at no less than 35-day intervals. In this case, Safeguard's unwarranted and unnecessary replacement of the

locks, seizure and disposal of property within Morgan's house and from the Property and monthly inspection fees have resulted in unjust enrichment to Safeguard.

**FOURTEENTH CAUSE OF ACTION**
**Defamation**
**(As to Chase)**

156. Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

157. Chase and/or its agents, contractors, employees made statements to third-parties that Morgan had not paid her mortgage debt, the Property was in foreclosure and that Chase owned the house. While in foreclosure, Chase attempted to further its own economic interests by willfully, wantonly and capriciously failing to address the wrongful placement of force placed insurance on the Property and the wrongful charging of premiums for the force placed hazard insurance to Morgan's escrow account, together with wrongfully assessed interest charges and late fees and their refusal to accept the mortgage payments made by Morgan against her mortgage debt. These statements were made by Chase to employees, agents and/or contractors hired to maintain the Property. Said statements formed the basis on which the Chase employees, agents and/or contractors proceeded to repeatedly foreclose on the Property, publicly seize Morgan's home, change the locks and trash out her house, resulting in the theft of and disposal of her personal property.

158. Said statements were false, known to be false and said statements were made with reckless and/or wanton disregard for the truth.

159. The false and defamatory statements made by Chase, its employees and/or agents, caused damage to the Morgan's reputation, good name and honor in the community in Euclid and before her family, friends and others, some of whom reside in Euclid.

**FIFTEENTH CAUSE OF ACTION**
**Libel**
**(As to Chase)**

160. Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

161. Chase and/or its employees and agents made written statements to third parties that Morgan had not paid her mortgage debt and that her house was in foreclosure. Said written statements formed the basis on which Chase employees, agents and /or contractors proceeded multiple times to

24

foreclose on the Defendant's home, publicly seize the house, change the locks and "trash out" the Property, resulting in the theft of and disposal of some of Morgan's personal property.

162. Said statements were false, Chase knew or should have known the statements to be false and said statements were made with reckless and/or negligent disregard for the truth.

163. In its capacity as a debt collector Chase routinely makes representations to borrowers, including Morgan about their loans, including but not limited to the name of the creditor, the unpaid principal balance, the due date, the interest rate, status of insurance, the monthly payment amount, the delinquency status, fees, and assessed corporate advances. Chase routinely makes these representations in collection calls and notices, monthly statements, payoff statements, reinstatement quotes, foreclosure filings, without obtaining hard copies of the documents relating to the alleged debts and the complete loan information from the various Chase internal departments maintaining said records.

164. Chase and their employees and agents routinely make these representations to credit reporting bureaus and the courts without having conducted quality control and other data integrity checks to ensure the factual accuracy of their representations relating to consumer debts as defined in section 803(5) of the Fair Debt Collection Practicing Act, 15 U.S.C. § 1692a(5).

165. Chase routinely lacked a reasonable basis for their representations to Morgan, credit agencies, and for their representations to the courts, because they failed to obtain and maintain accurate and complete information about Morgan's loan account, alleged debt and status of hazard insurance coverages.

166. In connection with the foreclosure filings, Chase and its legal counsel rushed to file foreclosure complaints without properly investigating and verifying the delinquency status of the loan and investigating and verifying any additional charges which are included in the delinquency amount of Morgan. In so doing, Chase intentionally concealed material facts from the courts in an effort to obtain a quick decree of foreclosure and reap financial benefits through "corporate advances" tacked on to the principal owed by Morgan.

167. The false and defamatory written statements made by Chase, its employees and/or agents caused damage to Morgan's reputation, credit, good name and honor in her community in Euclid and before her family and friends, some of whom reside in Euclid, Ohio near the subject property. In addition, the false and defamatory statements resulted in the intimidation and departure of

Morgan's contractor and this has resulted in an economic loss to Morgan due to her inability to complete renovations in a timely manner and place the house into the rental market.

## SIXTEENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (As to Chase)

168.  Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

169.  Chase owed a duty to Morgan to act as a reasonable and prudent servicer and lender during any and all foreclosure proceedings, which included the obligation to verify that it was foreclosing as a result of Morgan's default and not arising from said parties own breach of a duty owed to Morgan, including a duty to investigate the status of hazard insurance once documentation had been provided to them by Morgan.

170.  Chase, its agents, contractors and/or employees entered the Property and house without permission and authorization at no less than 35 day intervals from 2006 forward, and failing to restore possession of the Property to Morgan despite dismissals in each of the 2006, 2007, and 2008 foreclosure actions.  Chase, its agents, contractors and/or employees were on notice that they had no right or authority to continue to enter onto the Property, break into Morgan's home, seize the home and property and remove possessions within the house, garage and otherwise on the Property.

171.  Chase and/or its agents, contractors and/or employees were on notice that they had trespassed and continued to trespass on the Property in trying to obstruct Morgan's legal right of possession. Chase had a duty of reasonable care to investigate and correct any potential wrongful foreclosure at their costs, not that of the Morgan.

172.  Chase breached the duty it owed to Morgan by foreclosing and failing to investigate the status of pre-existing hazard insurance coverage for the Property, instead, seizing the Morgan's house and throwing or otherwise disposing of many of her possessions. The actions of Chase were taken with a negligent disregard for Morgan's rights and caused Morgan severe emotional distress, embarrassment and ridicule.

173.  Morgan has been damaged as a direct and proximate result of the actions of Chase, its agents, contractors and/or employees. Ms. Morgan's emotional distress includes, but is not limited to, extreme humiliation in front of relatives, friends and neighbors, loss of sleep, and this resulted in

medical treatment and prescriptions for anxiety medications to control her increased anxiety during the period of 2006 to 2008.

## SEVENTEENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (As to Safeguard and John Does 1 - 5)

174.  Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

175.  Safeguard, its agents, contractors and/or employees ( John Does 1-5) entered the Property and house without permission and authorization at no less than 35 day intervals from 2006 to date, never restoring possession of the Property to Morgan despite dismissals in each of the 2006, 2007, and 2008 foreclosure actions. Safeguard, its agents, contractors and/or employees were on notice that they had no right or authority to continue to enter onto the Property, break into Morgan's home, seize the home and property and remove possessions within the house, garage and otherwise on the Property.

176.  Safeguard and John Does 1-5 trespassed and continue to trespass on the Property, obstructing Morgan's legal right of possession.

177.  Safeguard's and John Does 1-5's actions were taken with a negligent disregard for Morgan's rights a and caused Morgan severe emotional distress, embarrassment and ridicule.

178.  Morgan has been damaged as a direct and proximate result of the actions of Safeguard, its agents, contractors and/or employees. Morgan's emotional distress includes, but is not limited to, extreme humiliation in front of relatives, friends and neighbors, loss of sleep, resulting in medical treatment and prescriptions for anxiety medications to control her increased anxiety during the period of 2006 to 2008.

## EIGHTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (As to Chase)

179.  Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

180.  Chase, its agents, contractors and/or employees owed a duty to Morgan to act as a reasonable and prudent servicer and lender during any and all foreclosure proceedings, which included the

obligation to verify that it was foreclosing as a result of Morgan's default and not arising from said parties breach of a duty owed to Morgan including a duty to investigate the status of hazard insurance once documentation had been provided by Morgan.

181.    The acts and/or omissions of Chase were done intentionally and/or with wanton disregard or gross indifference to the Morgan's rights.

182.    Chase, its agents, contractors and/or employees entered the Property and house without permission and authorization at no less than 35 day intervals during the various foreclosure process and proceedings, never restoring possession of the Property to Morgan despite dismissals in each of the 2006, 2007, and 2008 foreclosure actions. Chase, its agents, contractors and/or employees were on notice that they had no right or authority to continue to enter onto the Property, break into Morgan's home, seize the home and property and remove possessions within the house, garage and otherwise on the Property.

183.    Chase and/or its agents, contractors and/or employees were on notice that they had trespassed and continued to trespass on the Property while obstructing Morgan's legal right of possession. Chase had a duty of reasonable care to investigate and correct any potential wrongful foreclosure at their costs, not that of the Morgan.

184.    Chase breached the duty it owed to Morgan by foreclosing and failing to investigate the status of pre-existing hazard insurance coverage for the Property, instead, seizing Morgan's house and throwing or otherwise disposing of many of her possessions. Such actions were taken with a willful, wanton, and gross disregard for Morgan's rights and were so severe and outrageous as to shock the conscience and cause Morgan severe emotional distress, embarrassment and ridicule.

185.    Morgan has been damaged as a direct and proximate result of the actions of Chase, its agents, contractors and/or employees. Morgan's emotional distress includes, but is not limited to, extreme humiliation in front of relatives, friends and neighbors, loss of sleep resulting in medical treatment and prescriptions for anxiety medications to control her increased anxiety during the period of 2006 to 2008.

## NINETEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (As to Safeguard and John Does 1 - 5)

186.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

187.    Safeguard, its agents, contractors and/or employees (John Does 1-5) entered the Property and house without permission and authorization at no less than 35 day intervals from 2006 through 2011, never restoring possession of the Property to Morgan despite dismissals in each of the 2006, 2007, and 2008 foreclosure actions. Safeguard, its agents, contractors and/or employees had no right or authority to continue to enter onto the Property, break into Morgan's home, seize the home and Property and remove possessions within the house, garage and otherwise on the property.

188.    Safeguard and/or its agents, contractors and/or employees were on notice that it had trespassed and continued to trespass on the Property, yet continue to obstruct Morgan's legal right of possession. Safeguards' actions were taken with a willful, wanton, and gross disregard for Morgan's rights and were so severe and outrageous as to shock the conscience and cause Morgan severe emotional distress, embarrassment and ridicule.

189.    Morgan has been damaged as a direct and proximate result of the actions of Safeguard, its agents, contractors and/or employees. Morgan's emotional distress includes, but is not limited to, extreme humiliation in front of relatives, friends and neighbors, loss of sleep, resulting in medical treatment and prescriptions for anxiety medications to control her increased anxiety during the period of 2006 to 2008.

## TWENTIETH CAUSE OF ACTION
### Constructive Bailment
### (As to Chase and Safeguard)

185.    Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

186.    Upon forcibly entering the Property in October 2006 and locking out Morgan, Defendants Chase and Safeguard assumed a duty under the doctrine of constructive bailment to secure, protect and account for Morgan's personalty within the Property.

187.    Many items of value are now missing from the Property, including brand new appliances which were stored in their original boxes awaiting installation as the Property was under renovation at the time of lockout.

188.    Morgan's personal, financial and business records were stored in file cabinets which are now missing from the Property.

189. Morgan's memorabilia and family photos left at the Property are now missing.

190. Renovation supplies and materials, together with other items of value, are now missing from the Property.

191. Despite demand, Defendants Chase and Safeguard have failed and refused to return Morgan's missing personalty and failed to itemize the personalty removed from the Property.

192. Prior to authorizing Defendant Safeguard to "secure" the Property, Defendant Chase had knowledge of multiple incidents in which Safeguard employees stole personal property from borrowers in homes Safeguard was authorized to enter by lenders and servicers.

193. The acts and omissions of Defendants Chase and Safeguard in failing to secure and itemize Morgan's personalty constitute a breach of their duty of constructive bailment.

194. Morgan has been damaged as a result of the loss of her personalty, the value of which shall be established at trial.

## TWENTY-FIRST CAUSE OF ACTION
### Ohio Consumer Sales Practices Act
### (As to Chase and John Does 1-5)

195. Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

196. Morgan is a consumer as that term is defined in R.C. 1345.01(D).

197. Defendants Chase and John Does 1-5 are each suppliers as that term is defined in R.C. 1345.01(C).

198. The transaction at issue, including but not limited to the servicing and collection of the mortgage loan, is a consumer transaction as defined in R.C. 1345.01(A).

199. In connection with this transaction, Defendants Chase and John Does 1-5 committed unfair, deceptive and unconscionable acts and practices in violation of R.C. 1345.02, R.C. 1345.03 and R.C. 1345.031. Said acts and practices include, but are not limited to, misrepresenting the terms of the transaction; misrepresenting rights and obligations; deceptive, abusive and unfair collection

tactics; assessing or attempting to collect amounts not owed; incompetent, inadequate and inefficient customer service; and failure to act in good faith toward Morgan .

200.  Said acts and practices were committed knowingly and with actual malice or deliberate disregard for the rights of Morgan.

201.  As a direct and proximate result of the conduct of Defendants Chase and John Does 1-5, Morgan has suffered damages in the amount of money paid; great aggravation, inconvenience, humiliation and anxiety; having to defend a wrongful foreclosure action; and other damages to be proven at trial.

**TWENTY-SECOND CAUSE OF ACTION**
**RESPA 12 U.S.C. §2607**
**(As to Chase)**

202.  Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth herein.

203.  Morgan's loan and mortgage held and serviced by Defendant Chase is a "federally related mortgage loan" under RESPA.

204.  Chase is a mortgage servicer and/or lender to whom the requirements of RESPA apply as a "person" under Section 2607.  See 12 U.S.C. §2602.

205.  Pursuant to RESPA 12 U.S.C. §2607, Chase is prohibited from accepting any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, for the referral of any business "incident to or a part of a real estate settlement service involving a federally related mortgage loan".

206.  HUD has defined "settlement service" to include "provision of services involving hazard, flood or other casualty insurance".  See 24 C.F.R. §3500.2(b).

207.  The Morgan mortgage authorizes the mortgagee, where necessary to protect its interest, to force place insurance with a carrier of its choosing and charge the cost thereof to Morgan.

208.  Chase has a pre-arranged agreement or understanding with Assurant to provide force placed hazard insurance.

209. Upon information and belief, Chase receives kickbacks, commissions or things of value in exchange for referring force placed insurance orders to Assurant and/or American.

210. From 2006 to date, Chase has annually force placed insurance on the Property with American, a subsidiary of Assurant, or with Assurant itself.

211. Chase, by accepting kickbacks and commissions from Assurant specifically tied to the price of force placed insurance purchased for the Property and charged to Morgan, violated Section 2607 of RESPA.

212. As a result of such violation, Chase is liable to Morgan in the amount of three times its unlawful charges, together with Morgan's costs of this action and attorney fees.

## TWENTY-THIRD CAUSE OF ACTION
### Ejectment
### (As to Defendants Chase and Safeguard)

213. Morgan hereby realleges and incorporates by reference all paragraphs above, as though fully set forth herein.

214. At all pertinent times Morgan held legal title to the Property and was entitled to full possession thereof.

215. Morgan has been unlawfully deprived possession of the Property as a result o the acts and omissions of Defendants Chase and Safeguard.

216. Morgan has been damaged by the unlawful ejectment of Defendants Chase and Safeguard in an amount to be demonstrated at trial.

WHEREFORE, Plaintiff demands relief as follows:

a) On each Count, Morgan demands judgment in her favor and that she be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable Federal or Ohio law, attorneys' fees and costs and pre and post judgment interest on any award.

b)      A trial by jury.

Respectfully Submitted,

ANTHONY J. AVENI (#0004865)
Cannon, Aveni & Malchesky Co., LPA
41 East Erie Street
Painesville, Ohio 44077
aaveni@csalawgroup.com
Phone:  (440) 942-5232

JAMES V. AVENI (#0001918)
Ranallo & Aveni LLC
6685 Beta Drive
Cleveland, Ohio 44143
javeni@ranallolaw.com
Phone:  (440) 684-1600
Facsimile:  (440) 684-1601

Attorneys for Defendant, Debbie S. Morgan

L:\Archive\66610 Morgan, Debbie\Complaint.Morgan.Chasev7.032112.doc

33